**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**                                            **Case No. 03-20167-01-JWL**

**MAURICE D. IVORY,**

    **Defendant.**

_____

**MEMORANDUM & ORDER**

    Defendant Maurice D. Ivory was charged in the Second Superseding Indictment with possession with intent to distribute crack cocaine, possessing a firearm in furtherance of that crime, and being a felon in possession of a firearm.  A jury was unable to reach a verdict as to the first two charges (relating to the crack cocaine), but convicted him of being a felon in possession of a firearm.  The matter is before the court on his motion for judgment of acquittal and motion for new trial (Docs. 113 & 114).  By way of these motions, he seeks a new trial on the grounds that the court erred in denying his motion to suppress and in allowing the prosecution to present DNA evidence at trial, and he seeks judgment of acquittal on all charges based on the insufficiency of the evidence presented at trial.  For the reasons explained below, the motion for judgment of acquittal is retained under advisement as to Counts I and II and is denied as to Count III.  The motion for new trial is denied.

**BACKGROUND**

Consistent with the standard governing a motion for new trial and a motion for judgment of acquittal, the facts in this section are set forth in the light most favorable to the government. *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999) (noting that in reviewing these motions, the court views the evidence in the light most favorable to the government). The evidence at trial revealed that a parole violation warrant was issued for Mr. Ivory's arrest in July of 2003 because he had absconded from parole. On the morning of September 24, 2003, a team of law enforcement officers sought to arrest him by going to the residence where they believed he was living with his girlfriend or wife,[1] Shantay McIntosh. The officers testified that they knocked on the door and announced their presence, saw Mr. Ivory pull back the curtains and say something to the effect of "just a minute, please," then they heard footsteps running off into the house. They forced entry into the house and went in search of him.

While they were searching for him in the house, they saw a gun and a beige rock-like substance that they believed to be (and later in fact was determined to be) crack cocaine. These items were laying on the front seat of a car that was parked in the garage and the officers were able to see them through the car's windshield. They ultimately found Mr. Ivory hiding in the attic. His mother, Janice Evans, coaxed him down from the attic and law enforcement officers placed him under arrest. They then recovered the gun and crack cocaine from the vehicle in

---

[1] The evidence indicated that Ms. McIntosh was likely his common law wife, but whether she was actually his girlfriend or wife is immaterial for purposes of resolving the current motions.

2

the garage. Mr. Ivory was prohibited under federal law from owning or possessing a firearm or ammunition as a result of 1998 felony convictions. He was charged with three counts: (Count I) possession with intent to distribute crack cocaine; (Count II) possessing a firearm in furtherance of that crime; and (Count III) being a felon in possession of a firearm.

The evidence at trial revealed that Mr. Ivory lived in the house with Ms. McIntosh, his mother, and his siblings. Ms. McIntosh was the registered owner of the gun, and the registered owner of the vehicle was her cousin, Ralph Mayo. No one claimed ownership of the drugs. The predominant issue at trial was whether, notwithstanding Mr. Ivory's technical non-ownership of the gun and crack cocaine, he nonetheless "possessed" them. The jury was unable to reach a verdict on the first two charges pertaining to his alleged possession of crack cocaine. The jury did, however, find that he possessed the firearm and convicted him on the felon in possession charge. The jury's verdict was likely attributable to the fact that the government presented DNA evidence establishing Mr. Ivory's possession of the gun, but not the crack cocaine. Additional facts will be provided as they relate to the particular motions.

## MOTION FOR NEW TRIAL

Federal Rule of Criminal Procedure 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed. R. Crim. P. 33. "A motion for new trial under Fed. R. Crim. P. 33 is not regarded with favor and should be granted only with great caution." *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir.1998) (further quotation and citation omitted). The decision whether to grant a

motion for new trial is committed to the sound discretion of the trial court. *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992).

By way of Mr. Ivory's motion for a new trial, he argues that he is entitled to a new trial because the court erred by denying his motion to suppress and also by admitting DNA evidence at trial. The genesis of Mr. Ivory's motion regarding exclusion of the DNA evidence is the court's pretrial order in which it granted Mr. Ivory's motion to exclude this evidence because of the government's discovery violations (Doc. 57). The government took an interlocutory appeal of this ruling. On appeal the Tenth Circuit reversed, holding this court abused its discretion by excluding the DNA evidence as a sanction for the government's discovery violation. *See United States v. Ivory*, 131 Fed. Appx. 628 (10th Cir. 2005). Judge Seymour issued a thoughtful dissent in which she noted that she disagreed with the majority of the panel's conclusion that this court abused its discretion by excluding the DNA evidence. *Id.* at 633-36. In Mr. Ivory's current motion for a new trial, he contends that this court should have followed Judge Seymour's dissenting opinion and abided by its initial order excluding the DNA evidence. Of course, this court must abide by the Tenth Circuit's mandate and is not at liberty to disobey it. Mr. Ivory's argument to the contrary is patently without merit and the court presumes that he is simply preserving the argument for purposes of appeal. Thus, the court will turn its attention to his argument that the court erred by denying his motion to suppress.

On April 16, 2004, the court issued a Memorandum and Order (Doc. 30) denying Mr. Ivory's motion to suppress the contraband that law enforcement officers seized from the front seat of the vehicle that was parked in the garage of the residence when they arrested him on

September 24, 2003. In that order, the court ruled that law enforcement officers lawfully seized the contraband without a search warrant because their initial entrance into the residence was justified based on Mr. Ivory's status as an absconded inmate on post release supervision and his agreement to consent to search as a condition of supervision, once inside the residence they were justified in conducting a protective sweep of the home and the attached garage, and during the course of conducting the protective sweep they observed the contraband in plain view. Mr. Ivory now argues that (1) the court's reliance on the parolee exception was erroneous, and (2) the plain view exception to the warrant requirement was not met because the vehicle was locked and therefore the officers did not have a lawful right of access to the contraband.

The only new authority cited by Mr. Ivory in support of his argument that the court erroneously relied on the parolee exception is *United States v. Trujillo*, 404 F.3d 1238 (10th Cir. 2005). In *Trujillo*, as in this case, a warrant for the defendant's parole violation served as the impetus for law enforcement officers' search and seizure of contraband. The issue in *Trujillo*, however, was different than in this case in the sense that in *Trujillo* the officers arrived at the residence, found the defendant in his vehicle outside the residence, took him into custody, and then conducted a warrantless search of his residence during which they seized a gun, ammunition, and drug paraphernalia. *Id.* at 1241. The Tenth Circuit rejected the defendant's argument that his arrest terminated the clause in his parole agreement allowing for searches of his residence based on reasonable suspicion, and the court further concluded that reasonable suspicion existed to support the search of his residence. *Id.* at 1241-45. Thus, the

5

issue in *Trujillo* was the propriety of the search and seizure inside the parolee's home pursuant to the terms of the parole agreement *after* law enforcement officers had already completed the parolee's arrest. In contrast, in this case the court's original ruling denying Mr. Ivory's motion to suppress rested on independently justifiable grounds—namely, that law enforcement officers discovered the contraband in plain view while completing a lawful protective sweep of the garage. *Trujillo* actually undercuts Mr. Ivory's argument inasmuch as it emphasizes the enforceability of a consent to search provision contained in a parole agreement. *See, e.g.*, *id.* at 1245 ("Once there was reason to believe that Mr. Trujillo violated his parole agreement, there is, by definition, reasonable suspicion to support a search of his residence to 'ensure compliance' with the conditions of his parole."). Mr. Ivory agreed to a similar provision in his parole agreement which stated that he consented to parole officers searching his residence. That is precisely what they did in attempting to apprehend him and, in doing so, they observed the contraband. Thus, the court finds Mr. Ivory's reliance on *Trujillo* to be misplaced.

With respect to Mr. Ivory's plain view argument (i.e., that the officers did not have a lawful right of access to the contraband because the vehicle was locked), Mr. Ivory merely repeats the same arguments that the court previously rejected. The court has already discussed what it believes to be the significance of the cases cited by Mr. Ivory. Thus, Mr. Ivory's arguments relying on those cases are rejected for the same reasons previously stated by the court in its Memorandum and Order denying his motion to suppress. Accordingly, Mr. Ivory's motion for a new trial is denied.

## MOTION FOR JUDGMENT OF ACQUITTAL

The court must uphold the jury's guilty verdict if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (quoting *United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir. 1999)). The court "must ask 'only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find [defendant] guilty beyond a reasonable doubt.'" *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001) (quoting *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999)). "Furthermore, 'the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'" *Id.* (quoting *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)).

Mr. Ivory moves for judgment of acquittal on all three charges against him. As explained previously, the jury was unable to reach a verdict on Counts 1 and 2, both of which pertained to his alleged possession of crack cocaine, and the court declared a mistrial on those charges. The government, in its response, explains that it intends to request dismissal of these two charges at the time Mr. Ivory is sentenced for his conviction on Count 3. This would render moot Mr. Ivory's motion with respect to these charges. Thus, for the time being the court retains this aspect of Mr. Ivory's motion under advisement. The court turns, then, to the sufficiency of the evidence on the only charge of which the jury convicted Mr. Ivory—that is, being a felon in possession of a firearm.

The essential elements of a felon in possession charge in violation of § 922(g)(1) are as follows: "(1) the defendant was convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004). In this case, Mr. Ivory stipulated to the fact of his prior felony conviction and the interstate nexus requirement. The pivotal issue was whether he possessed the firearm. "Possession" under § 922(g)(1) can be either actual or constructive. *United States v. Norman*, 388 F.3d 1337, 1340 (10th Cir. 2004). Here, the evidence was sufficient to support the jury's verdict under both theories of possession.

A person has actual possession of an object if he or she has direct physical control over an object at a given time. *United States v. Zink*, 612 F.2d 511, 516 n.1 (10th Cir. 1980). In this case, the linchpin of the government's case against Mr. Ivory consisted of DNA evidence which, viewed in the light most favorable to the government, established that Mr. Ivory actually possessed the gun by exercising direct physical control over it on or about September 24, 2003. Alan Jaskinia was the law enforcement officer who processed the firearm after it was recovered from the residence. He took DNA swabs from the gun's grip, trigger guard, and rear of the slide. Mary Koch, a forensic scientist with the Kansas Bureau of Investigation, performed the DNA analysis and compared the DNA recovered from the gun with oral swabs taken from Mr. Ivory. She testified that the partial DNA profile obtained from the swabs taken from the pistol grip was insufficient, but that the partial DNA profile obtained from the swabs taken from the trigger guard as well as the major portions of the partial DNA profile from the

8

rear of the slide were consistent with Mr. Ivory's known DNA profile. Significantly, she testified that studies have shown that "the major contributor is generally the last person that handled" the object. In other words, the DNA evidence indicated that Mr. Ivory was the last person to handle both the trigger guard and the rear slide of the gun. Although defense counsel made a valiant attempt to discredit Ms. Koch's testimony, the jury was entitled to give Ms. Koch's testimony the weight the jury believed it deserved. *United States v. Dirden*, 38 F.3d 1131, 1142 (10th Cir. 1994) (court must accept the jury's resolution of conflicting evidence and its assessment of witness credibility). Thus, the jury could have found beyond a reasonable doubt that Mr. Ivory actually possessed the gun not long before he was apprehended by law enforcement officers the morning of September 24, 2003.

The jury also could have found beyond a reasonable doubt that Mr. Ivory constructively possessed the firearm on or about that date. Constructive possession exists where the defendant has the power to exercise control or dominion over the contraband. *United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). In most cases, constructive possession over an object may be inferred if the defendant had exclusive possession of the premises, but it also may be found in joint occupancy cases where the government demonstrates "some connection or nexus between the defendant and the firearm or other contraband." *Norman*, 388 F.3d at 1341 (quotation omitted). The court can sustain a conviction based on constructive possession where the evidence supports at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband. *Id.* Constructive possession may be established by circumstantial evidence. *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir.2000).

9

In this case, the evidence revealed that the registered owner of the gun was Ms. McIntosh. She purchased the gun from a place called The Bullet Hole on May 31, 1999. But, although Ms. McIntosh testified that she purchased the gun to use for her own safety, the jury reasonably could infer from the evidence that she purchased the gun for Mr. Ivory to use. She was involved with Mr. Ivory at the time she purchased it. At that time, he had already been convicted of a felony and could not lawfully have purchased the gun himself. Only seven months after she purchased the gun, Mr. Ivory was arrested in January of 2000 and law enforcement officers recovered the gun – loaded – from him.[2] Also, although Ms. McIntosh had purportedly purchased the gun to use for her own safety, she did not demonstrate credible knowledge about how to use it. She testified that in order to fire the gun a person would need to load the ammunition into the magazine (she demonstrated how to do this), make sure the safety is off, then pull the trigger. Yet Detective William Johnson testified that this particular gun has an internal drop safety. As such, it is not the type of safety that involves an external mechanism that must be turned off in order to be able to pull the trigger and fire the weapon. Rather, it is an internal safety feature rather than a safety button. He also pointed out that Ms.

---

[2] In this respect, the court wishes to emphasize the lack of credibility of Ms. McIntosh's testimony inasmuch as she attempted to cover for Mr. Ivory by distancing him from both the gun and the automobile. For example, she testified that during his arrest in January of 2000 the gun was recovered from the jacket he was wearing and that the jacket was hers, not his. In contrast, Detective Michael Shomin testified that when Mr. Ivory was arrested the gun was recovered from his waistband in the front part of his trousers. Detective Albert DeValkenaere likewise testified that when they recovered the gun from Mr. Ivory in January of 2000, he "took it out of his waistband."

McIntosh neglected to point out that a person would have to load a round into the chamber before the gun would fire.

The evidence also revealed that the vehicle within which the gun was recovered on September 24, 2003, was owned by Ms. McIntosh's cousin, Ralph Mayo.[3]  Like the gun, however, the jury reasonably could infer from the evidence that Mr. Ivory had been driving the car on or around that date.  The prosecution presented as evidence documents that were retrieved from the glove compartment of the vehicle.  Those documents were dated July 14, 2003, and Mr. Ivory's name and signature appeared on them.  Mr. Mayo testified that he had another car that he was driving at the time and Ms. McIntosh testified that Mr. Ivory "didn't have a vehicle to drive" at that time.  Of course the plausible inference here was that Mr. Ivory had been driving Mr. Mayo's car because Mr. Mayo was not using it and it was sitting in Mr. Ivory's garage.  Also, although Ms. McIntosh testified that she had last driven the car the night prior in order to put air in the tires, she notably did not claim ownership of the rock of crack cocaine that was sitting on the car seat.  Nor did Mr. Mayo.  The jury was not obligated to believe either of their testimony in which they attempted to establish that Mr. Ivory had not been driving the car.  Moreover, the keys to the automobile were found in a drawer in the master bedroom that was shared by Mr. Ivory and Ms. McIntosh.  This circumstantial evidence, particularly when combined with the evidence concerning Mr. Ivory's DNA on the gun, amply

---

[3] The prosecution undermined Ms. McIntosh's credibility on this issue, too.  Ms. McIntosh specifically testified that she denied telling law enforcement officers on the day of Mr. Ivory's arrest that the car was his.  Detective Michael Bailey and Detective Shomin, however, both testified that Ms. McIntosh told them on that day that the car was Mr. Ivory's.

provided a sufficient nexus from which knowledge of and access to the gun could have been plausibly inferred. Hence, the evidence supports a finding that he constructively possessed the gun. Accordingly, Mr. Ivory's motion for judgment of acquittal is denied as to Count III.

**IT IS THEREFORE ORDERED THAT** defendant Maurice D. Ivory's Motion for Judgment of Acquittal (Doc. 113) is retained under advisement as to Counts I and II and is denied as to Count III.

**IT IS FURTHER ORDERED THAT** defendant Maurice D. Ivory's Motion for New Trial (Doc. 114) is denied.

**IT IS SO ORDERED** this 28th day of October, 2005.

> s/ John W. Lungstrum
> John W. Lungstrum
> United States District Judge