**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **Case Nos. 03-20167-01-JWL**
**08-2250-JWL**

**MAURICE D. IVORY,**

**Defendant.**

---

## MEMORANDUM & ORDER

Defendant Maurice D. Ivory was convicted of being a felon in possession of a firearm and the jury hung on charges of possession with intent to distribute crack cocaine and possessing a firearm in furtherance of that crime. Following trial, the court denied his motion for a new trial, *see United States v. Ivory*, 396 F. Supp. 2d 1253 (D. Kan. 2005), dismissed the remaining charges relating to the crack cocaine at the government's request, and sentenced him to 262 months in prison. The Tenth Circuit subsequently dismissed his appeal. *See United States v. Ivory*, 223 Fed. Appx. 808, 2007 WL 1314484, at *1-*2 (10th Cir. May 7, 2007). The matter is now before the court on his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence (doc. 147), in which he raises an ineffective assistance of counsel claim based on his attorney's failure to call his retained DNA expert at trial. For the reasons explained below, Mr. Ivory has not established that his

counsel's performance was deficient or that he was prejudiced by the alleged deficiency, and his § 2255 motion is therefore denied.

**BACKGROUND**

The evidence at trial revealed that a parole violation warrant was issued for Mr. Ivory's arrest in July of 2003 because he had absconded from parole. On the morning of September 24, 2003, a team of law enforcement officers sought to arrest him by going to the residence where they believed he was living with his live-in girlfriend/significant other, Shantay McIntosh. The officers testified that they knocked on the door and announced their presence, saw Mr. Ivory pull back the curtains and say something to the effect of "just a minute, please," then they heard footsteps running off into the house. They forced entry into the house and went in search of him. While the officers were searching for him in the house, they saw a gun and a rock of crack cocaine laying on the front seat of a car that was parked in the garage. They ultimately found Mr. Ivory hiding in the attic and placed him under arrest. As a result of the officers finding the gun and crack cocaine, Mr. Ivory was charged in this case with (Count I) possession with intent to distribute crack cocaine, (Count II) possession a firearm in furtherance of that crime, and (Count III) being a felon in possession of a firearm.

The predominant issue at trial was whether Mr. Ivory possessed the crack cocaine and the gun. Mr. Ivory lived in the house with Ms. McIntosh, his mother, and his siblings. Ms. McIntosh was the registered owner of the gun, and the registered owner of the vehicle was

her cousin, Ralph Mayo. No one claimed ownership of the drugs. The jury found that he possessed the firearm and convicted him on the felon-in-possession charge. The jury was unable, however, to reach a verdict on the first two charges because they were apparently unable to agree on whether he possessed the crack cocaine. The government's case rested in significant part on the testimony of Mary E. Koch, a forensic scientist and DNA expert employed by the Kansas Bureau of Investigation, who testified that DNA found on the gun was consistent with Mr. Ivory's DNA. In other words, her testimony established that Mr. Ivory had been in possession of the gun. There was, however, a lack of any such DNA evidence relating to the crack cocaine.

Mr. Ivory now seeks relief pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel because his attorney failed to call a DNA expert to rebut Ms. Koch's testimony. The record in the case establishes that prior to trial Mr. Ivory's attorney, Bob Thomas, retained Dean A. Stetler, Ph.D. as a DNA expert. Before trial the government filed a motion to exclude Mr. Stetler's testimony. *See* Govt.'s Mot. to Exclude Expert Witness (doc. 99). On August 1, 2005, the court held a hearing on the motion at which time the court discussed at length with Mr. Thomas the anticipated substance of Dr. Stetler's testimony. *See* Trans. of Mots. Hrg. (doc. 130), at 137-59. The court understood Dr. Stetler's anticipated testimony to be essentially that "if one doesn't follow the protocols and the procedures correctly there is a risk of cross contamination." *Id.* at 158. The court denied the government's motion to exclude, but explained that Dr. Stetler's opinions "may not go beyond what is set out in his report." *Id.* at 155. At trial, Mr. Thomas

advised the court at the conclusion of Ms. Koch's testimony that he had decided not to call Dr. Stetler as a witness. In fact, Dr. Stetler has submitted an affidavit in which he explains that he was en route to testify at trial when he received a telephone call from Mr. Thomas's office informing him that his testimony was not needed. Mr. Ivory now argues that Mr. Thomas's failure to call Dr. Stetler to testify at trial constituted ineffective assistance of counsel.

## LEGAL STANDARD FOR A § 2255 MOTION

Title 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* Relief under § 2255 is warranted only for jurisdictional or constitutional claims or errors that reveal "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). The court must hold an evidentiary hearing on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255; *accord United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000) (internal quotation omitted).

## DISCUSSION

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The court reviews ineffective assistance of counsel claims according to the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under this test, the defendant must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced the defense. *Id.* at 687-88; *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006). Because a defendant must demonstrate both *Strickland* prongs to establish an ineffective assistance of counsel claim, a failure to prove either one is dispositive. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000); *Orange*, 447 F.3d at 797.

**A. Deficient Performance**

Turning to the first prong, Mr. Ivory must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish deficient performance on an ineffective assistance of counsel claim, a defendant "must show that counsel's representation fell below an objective standard of reasonableness" as measured "under prevailing professional norms." *Id.* at 688. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "Review of counsel's performance under the first prong of the *Strickland* test is highly deferential." *Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006). "To show deficient performance, [the defendant] must overcome a 'strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance; that is, [he or she] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Hooker v. Mullin*, 293 F.3d 1232, 1243 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

In this case, Mr. Ivory's ineffective assistance claim fails on the first *Strickland* prong because Mr. Thomas's performance was not deficient in deciding not to call Dr. Stetler as an expert DNA witness at trial. This decision did not fall below an objective standard of reasonableness under the circumstances confronting Mr. Thomas at the time of trial. At that time, the court had already issued its pretrial ruling that it only intended to allow Dr. Stetler to testify as to the opinions he expressed in his pretrial disclosure, which only included his opinions relating to risks that cross-contamination can occur in DNA testing. The government's motion to exclude Dr. Stetler's opinion was based on its concern that his opinions did not relate to the DNA testing protocol that was actually followed by Ms. Koch in this case. *See* Govt.'s Mot. to Exclude Expert Witness (doc. 99), at 4 (arguing that "his report is replete with examples where he ignored the protocol utilized in this case and concocted his own procedures in an attempt to raise doubt with the testing performed by Ms. Koch"). During the hearing on the government's motion, the court advised Mr. Thomas that

it did not believe that the anticipated testimony by Dr. Stetler would be that helpful to Mr. Ivory. *See* Trans. of Mots. Hrg. (doc. 130), at 148 (observing that the opinions given in Dr. Stetler's report "honestly are not all that helpful in the sense that I suspect any witness is going to acknowledge that there are inherent risks if you don't do it right"), 151 ("I look at this report, and I don't think he's saying anything that is very -- is a big deal other than what is out there to be acknowledged on cross examination"), 153 (informing Mr. Thomas that "what you have done here is provided an expert's report that says he has the opinion that if you don't do it right there could be cross contamination. Honestly, if that's all he's going to testify to, . . . I don't think that's particularly helpful to the defendant"). In fact, the court pointed out that if Mr. Thomas were to have Dr. Stetler testify, he would be subject to cross examination about whether Dr. Stetler performed any independent testing (he did not), that he did not check to see whether the DNA from the gun swabs were actually Mr. Ivory's, and whether samples were available to him (which they were).

At trial, Ms. Koch testified in great detail concerning the DNA testing procedures that she used to eliminate the possibility of cross contamination. She explained how she processed the evidence samples (the swabs from the gun) before the known oral swabs from Mr. Ivory, and how she processed the evidence samples separately from the "knowns." She reported the following results from her DNA testing: the partial DNA profile obtained from the swab from the pistol grip was insufficient for comparison to the known sample from Mr. Ivory; the partial DNA profile obtained from the swab from the trigger guard was consistent with the known DNA profile of Mr. Ivory; and the partial DNA profile obtained from the

swab from the right side of the slide was consistent with a mixture of DNA types from at least two individuals, the major portion of which was consistent with the known DNA profile of Mr. Ivory. On cross examination, Mr. Thomas asked Ms. Koch questions designed to raise the possibility that cross contamination may have occurred, pointing out that she transposed numbers on one of her Quanti-blot forms, and obtaining an admission from her that another DNA tester at her laboratory made a mistake resulting in sample mixup or cross contamination in two other cases that were processed at the same time. He further made the point that it was not until the evidentiary samples and the knowns from Mr. Ivory were placed on a table together during that amplification process that any DNA was actually detectable on the evidentiary samples.

Before Mr. Thomas informed the court that he had decided not to call Dr. Stetler as a witness, the government had notified the court that it might need to recall Ms. Koch as a rebuttal witness. *Id.* at 437-38. In other words, Mr. Thomas knew that if he decided to have Dr. Stetler testify about the risks of cross contamination, the government was prepared to recall Ms. Koch to discredit Dr. Stetler's testimony. By this point in time, Ms. Koch had already testified in great detail about the procedures that she followed to eliminate the possibility of cross contamination. Thus, if Mr. Thomas would have called Dr. Stetler, the government could have rebutted that testimony with even more meticulous evidence that once again reemphasized that the protocol she followed minimized or eliminated this risk. Moreover, the government could have made the point that Dr. Stetler did not perform his own independent DNA testing and, consequently, he was unable to testify that the samples

were not consistent with Mr. Ivory's DNA.  Thus, in light of the point in time when Mr. Thomas apparently made the decision not to call Dr. Stetler as a witness, *see id.* at 504, it was a strategic trial decision made in light of the anticipated value (or perhaps lack thereof) and possible risks associated with putting him on the stand.  Counsel's decision not to call him as a witness was not unreasonable under prevailing professional norms.

Moreover, in closing arguments Mr. Thomas pointed out that Ms. Koch's testimony did not mean for certain there was cross contamination, but it also did not mean that there was *not* cross contamination.  *See* Trans. of Closing Statements (doc. 132), at 622.  Based on this theory, he argued to the jury that "there's no reason to believe that the DNA that's found on this gun by Ms. Koch was anything other than DNA that was deposited on that gun when we know Mr. Ivory possessed it in January of 2000."[1]  *Id.* at 624.  He encouraged the jury to judge Ms. Koch's credibility because she "came here with an agenda" where she was "in the mode of defending her practices and the practices of her lab before those practices were even attacked."  *Id.* at 630.  In sum, this is not a case where Mr. Thomas failed to attempt to discredit the persuasiveness of the government's DNA testimony such that he was not functioning as the "counsel" guaranteed Mr. Ivory by the Sixth Amendment.  Mr. Ivory has not shown that Mr. Thomas's decision not to call Dr. Stetler as a witness was objectively unreasonable in the sense that it fell below the wide range of reasonable professional assistance that might be considered sound trial strategy.

---

[1] This evidence will be discussed below.

His arguments to the contrary are without merit. In support of his § 2555 motion, he has submitted an affidavit from Dr. Stetler. Dr. Stetler states that he has reviewed the trial transcript of Ms. Koch's testimony and that the defense should have presented rebuttal testimony from a DNA expert on three specific subjects. First, he takes issue with Ms. Koch's testimony that "the indications of studies that have been done are that with these very low levels of DNA and with handling of objects indicates that the last person to touch it is the major profile." *See* Tr. Trans. (doc. 131), at 484. According to Dr. Stetler, he is not aware of any such study and, at the very least, she should have been asked to identify this study. He states that a defense expert would have provided testimony that would have made clear that the order in which two people handled an object cannot be determined, the time delay between two people handling an object cannot be determined, or even whether the second person actually handled the object cannot be determined (because of the documented occurrence of transfer of DNA from one person to another and then to an object). The problem with this proffered testimony is that the court had already issued a pretrial ruling[2] that it would not permit Dr. Stetler to testify beyond the opinions that he expressed in the expert report disclosed to the prosecution and, as Mr. Thomas himself explained, the thrust of those opinions was going to be that "[h]e's reviewed the protocols, and the best he can say is there's a risk of cross contamination." *See* Tr. of Mot.'s Hearing (doc. 130), at 152. Testimony concerning the extent to which more than one person handling an object results

[2] Mr. Ivory does not challenge this ruling in the arguments he raises in his § 2255 motion.

in someone being a major contributor to the DNA profile was not a subject that is within the scope of the opinions disclosed to the prosecution and, consequently, the court likely would have sustained an objection by the prosecution to Dr. Stetler offering testimony on this subject. Thus, the fact that Mr. Thomas did not call Dr. Stetler to offer this testimony – which the court probably would have excluded from evidence anyway – cannot be viewed as objectively unreasonable under professional norms.

Second, Dr. Stetler takes issue with Ms. Koch's testimony that the precautions she took while processing the samples eliminated the possibility that she contaminated the evidence samples with the known oral swab from Mr. Ivory. He states that a rebuttal witness would have made it clear that there was no way to completely eliminate this possibility. This is the only opinion offered by Dr. Stetler now, in support of Mr. Ivory's § 2255 motion, that is consistent with the opinion he originally intended to offer. For the reasons described at length above, however, it is apparent that Mr. Thomas made the decision not to call Dr. Stetler to offer this testimony – probably because of its relatively marginal value as compared to the risks of putting Dr. Stetler on the stand and subjecting him to cross examination about the fact that the defense did not conduct any independent testing to establish that the DNA was not Mr. Ivory's.

Third, Dr. Stetler takes issue with Ms. Koch's testimony that the concentration of DNA in Mr. Ivory's known sample was not sufficient to produce a profile even if it had cross contaminated the evidence samples. *See* Tr. Trans. (doc. 131), at 464-66. According to Dr. Stetler, a defense expert would have been able to make it clear that there was a high enough

concentration of DNA in Mr. Ivory's known sample to be able to contaminate the evidence samples and result in the profile obtained. Again, however, this opinion does not appear to have been expressed in Dr. Stetler's expert report disclosed to the government and, as such, the court likely would have excluded it as beyond the scope of that report. Moreover, even though this opinion raises the possibility that there was a high enough concentration of DNA in Mr. Ivory's known sample to be able to contaminate the evidence samples, it does not explain how that would have occurred if, as Ms. Koch testified, she "never had the known sample open when the evidence tubes were open." *Id.* at 465. Thus, although this opinion would have given rise to the inference concerning the adequacy of the concentration of the DNA in Mr. Ivory's known sample, the jury would have had to make an additional inference (one which was not supported by the evidence) about how Mr. Ivory's known sample could have gotten into the evidence sample. For all of these reasons, then, Mr. Thomas's decision not to call Dr. Stetler to attempt to offer this testimony can hardly be viewed as objectively unreasonable.

In addition to the court's observations about the reasonableness of Mr. Thomas's decision not to call Dr. Stetler as a DNA expert at trial, the court further wishes to remark about the overall effectiveness of his representation of Mr. Ivory. *See Bullock v. Carver*, 297 F.3d 1036, 1048 (10th Cir. 2002) ("The Supreme Court has cautioned that even in circumstances where an attorney erred, '[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the "identified acts or omissions" overcome the presumption that counsel rendered

reasonable professional assistance.'" (quoting *Kimmelman*, 477 U.S. at 386)); *see also United States v. Smith*, 10 F.3d 724, 728 (10th Cir. 1993) (per curiam) (stating that "counsel's representation as a whole should be considered when determining whether the defendant received a fair trial"). Mr. Thomas was initially successful in persuading this court that it should exclude the DNA evidence as a sanction for the government's discovery violation, even though the Tenth Circuit reversed that ruling on appeal. *See United States v. Ivory*, 131 Fed. Appx. 628, 2005 WL 1079881, at *1-*8 (10th Cir. May 9, 2005). He also did a commendable job of actively representing Mr. Ivory at trial. In fact, his representation was so effective that the jury hung on the charges against Mr. Ivory relating to the crack cocaine.[3] For all of these reasons, the court rejects Mr. Ivory's suggestion that Mr. Thomas's performance was deficient in not calling Dr. Stetler as a DNA expert at trial.

**B. <u>Prejudice</u>**

Under the second prong of the *Strickland* analysis, Mr. Ivory must also show that counsel's allegedly deficient performance prejudiced the defense. *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). Under this prong, the defendant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* (quoting *Strickland*, 466 U.S. at 694). "'A

[3] Although Mr. Thomas may have subsequently encountered some difficulties, *see, e.g.*, *United States v. Ivory*, 223 Fed. App. 808, 2007 WL 1314484, at *1 n.1 (10th Cir. May 7, 2007) (noting that defense counsel failed to file an opening brief after two deadline extensions and that the Tenth Circuit referred him to the Tenth Circuit's attorney discipline program), he was quite effective in his overall representation of Mr. Ivory before this court.

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (same). The court reviews the totality of the evidence in determining whether there is prejudice. *Id.*

Here, the primary issue at trial relating to the felon-in-possession charge was whether Mr. Ivory possessed the gun. He was living at the house where these items were found. The car in which these items were found was owned by someone who was not living at the house – Ms. McIntosh's cousin, Ralph Mayo, who testified that he was not driving the car at that time. He had been pulled over in it because the tinted windows were too dark. He parked the car in Ms. McIntosh's garage, gave her the keys, and started driving another vehicle that he owned. Despite Mr. Mayo's ownership of the car, law enforcement officers found papers in the glove box from Heart of America Treatment Center with Mr. Ivory's name on them. Additionally, Ms. McIntosh testified that she owned and drove her own Monte Carlo, and there was a notable lack of evidence about what vehicle Mr. Ivory was driving at that time. This evidence, then, established some degree of connection between Mr. Ivory and the car in the sense that he had been in the car, and perhaps had been driving it.

There was plenty of other persuasive evidence (aside from the DNA evidence) connecting Mr. Ivory not only to the car, but also to the gun. Ms. McIntosh was the record owner of the gun. Significantly, however, her testimony was suspect because of her obvious self interest in seeking to keep her significant other, Mr. Ivory, from going to prison for possessing the gun. He was a convicted felon who could not lawfully possess the gun whereas she was not similarly restricted from gun ownership. Additional evidence indicated

that Mr. Ivory was the individual who actually used the gun and, indeed, that Ms. McIntosh may have actually even purchased it for him to use. Ms. McIntosh bought the gun in May of 1999. By that time, Mr. Ivory had already been convicted of a felony in 1998 and therefore he would have been unable to purchase the gun himself. Less than a year after Ms. McIntosh purchased the gun, law enforcement officers arrested Mr. Ivory on January 31, 2000, and found the gun in his possession. The gun was retained in police custody until Ms. McIntosh was permitted to retrieve it on March 3, 2003. Then, only approximately six months later, law enforcement officers once again found the gun near Mr. Ivory (in the car in the house where he was living) when they arrested him for a parole violation. The most fatal flaw in Ms. McIntosh's testimony was that she was unable to demonstrate a working knowledge of the safety features of the gun. Consequently, it was obvious that she did not know how to use it. The import of Ms. McIntosh's testimony, then, was a failed attempt to downplay the significance of the fact Mr. Ivory had possessed this very gun on a prior occasion when the authorities arrested him in 2000. Additionally, there was, of course, the evidence about the fact that he was a convicted felon whom authorities were trying to arrest on the day in question for a parole violation, and who tried to hide from law enforcement officers when they came to get him that morning. In short, there was ample evidence that Mr. Ivory led the type of lifestyle that often goes hand in hand with carrying a gun.

As if that were not enough to establish a strong connection between Mr. Ivory and the gun, Ms. Koch testified that the DNA found on the gun was consistent with Mr. Ivory's known DNA profile. The proffered DNA evidence now set forth in Dr. Stetler's affidavit

would not have been sufficient to give rise to a probability sufficient to undermine confidence in the conviction. Dr. Stetler's first opinion challenges Ms. Koch's opinion that the last person to touch an object is the major DNA profile. Even accepting Dr. Stetler's opinion in this respect as true, however, it does not undermine the fact that the gun had Mr. Ivory's DNA all over it, it was found in a vehicle in which Mr. Ivory had been in recent months, and in a house where he was staying. Ms. McIntosh retrieved the gun from police custody on March 3, 2003, and testified that she used it the night before authorities arrested Mr. Ivory on the day in question. Yet, Dr. Stetler's affidavit does not proffer any testimony that Ms. McIntosh's DNA was found on the gun.

Dr. Stetler's second opinion is that there was no way Ms. Koch could have completely eliminated the possibility of cross-contamination. Significantly, however, Dr. Stetler has still failed to discuss the degree of risk in light of the protocol followed by Ms. Koch and, the court might add, Ms. Koch was a persuasive witness who was obviously very meticulous in her DNA testing. Consequently, permitting Dr. Stetler to testify about an abstract risk of cross contamination would have simply opened the door for the prosecution to bolster the credibility of Ms. Koch's testimony even further by calling her as a rebuttal witness. Dr. Stetler's third opinion is that there was a high enough concentration of DNA in Mr. Ivory's known sample to be able to contaminate the evidence samples. Again, however, even if there was a high enough concentration, he does not explain how this could have occurred given the careful DNA testing procedures followed by Ms. Koch. The evidence proffered in Dr.

Stetler's affidavit simply would not have been that helpful to Mr. Ivory. The evidence that he possessed the gun not long before he was arrested was too overwhelming.

In short, this is not a case where defense counsel failed to call a DNA expert who would have testified that the DNA found on the gun was not Mr. Ivory's DNA or that it was someone else's DNA (such as Ms. McIntosh's). Instead, here, the testimony offered by Dr. Stetler would have, at best, merely raised the possibility that Ms. Koch's DNA results were not as conclusive as she believed them to be. But this simply would not have been enough for the jury to entirely reject the DNA evidence in light of all of the other evidence at trial connecting Mr. Ivory to the gun. Thus, Mr. Ivory's ineffective assistance claim fails for the additional reason that there is not a reasonable probability that the result of the proceeding would have been different even if Mr. Thomas had called Dr. Stetler to testify about the items set forth in his affidavit. Because this evidence does not undermine confidence in the outcome in light of the totality of the evidence, Mr. Ivory was not prejudiced by the alleged deficiency of counsel in deciding not to present this evidence. Accordingly, Mr. Ivory also has not made the showing necessary to satisfy the second *Strickland* prong. Because the motion and files and records of the case conclusively show that Mr. Ivory is entitled to no relief on the grounds urged by him, then, his § 2255 motion is denied.

**IT IS THEREFORE ORDERED THAT** defendant Maurice D. Ivory's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (doc. 147) is denied.

**IT IS SO ORDERED** this 22nd day of August, 2008.

                                       s/ John W. Lungstrum
                                       John W. Lungstrum
                                       United States District Judge